**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARLANDO STORY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:20-1099** |
| v | : | |
| | | **(JUDGE MANNION)** |
| **C. HOWARD, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

**I. Background**

Plaintiff, Arlando Story, an inmate housed in the Allenwood Federal Correctional Institution, White Deer, Pennsylvania, filed the above captioned federal civil rights action pursuant to 28 U.S.C. §1331. (Doc. 1).

Plaintiff alleges that on May 2, 2020, he sustained injuries when he "fell off the top bunk latter (sic) trying to get down, due to [his] knee giving way" and he "lost balance and hit the left side of [his] face on the floor, injuring [his] left eye." Id. He states that his "roommates contacted the unit officer" who "proceeded to contact medical" who "on arrival examined [his] injury then proceeded to glue and bandage [his] left eyebrow." Id. Since his injury, Plaintiff claims to "experience severe headaches, blurry vision and swelling to [his] left eye upon waking every morning, but received no medical attention

1

after submitting numerous emails/cop-outs to medical pertaining to [his] injury/pains until 6-11-20 when [he] was told by PA S. Gosa there was never records of [his] injury on May 2nd."

Plaintiff files the instant action, seeking compensatory and punitive damages, claiming that "Defendants all knew or should have known that claimant had medical complications and was transferred to their facility to be further evaluated due to the medical transfer" and that "Defendants denied medical treatment and refuse to protect claimant from injury that is cited in this application;" specifically, that Plaintiff "at all times required a lower bunk due to his medical complications." Id.

Presently before the Court is Defendants' motion to dismiss and for summary judgment. (Doc. 12). Defendants argue, *inter alia*, that Plaintiff failed to exhaust his administrative remedies with respect to denial of a lower bunk pass or that he was denied appropriate medical treatment after falling from his top bunk on May 2, 2020. Id. The motion is fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## II. Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse

Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.

White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

### III.  Statement of Facts[1]

The Bureau of Prisons (BOP) has an administrative remedy procedure with respect to inmate complaints, namely 28 C.F.R. §542.10, *et seq*.

The BOP's Administrative Remedy Program allows an inmate to seek formal review of an issue relating to any aspect of his confinement. 28 C.F.R. §542.10(a). Before seeking formal review, an inmate must first attempt to resolve the matter informally by presenting his complaint to staff on an Informal Resolution Attempt form commonly referred to as a BP-8. 28 C.F.R. §542.13(a). If informal resolution is unsuccessful, the inmate may then seek relief from the warden with the submission of a Request for Administrative Remedy, commonly referred to as a BP-9. 28 C.F.R. §542.14. The deadline for completion of the BP-8 and submission of the BP-9 is twenty days from

---

[1] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 14) will be deemed admitted.

the date of the event which is the subject of the remedy. Id.

If the inmate is not satisfied with the warden's response, he has twenty days from the date of the response, to file a BP-10, Regional Administrative Remedy Appeal, with the Regional Director. 28 C.F.R. §542.15(a). If the response of the Regional Director is not satisfactory, the inmate may then file, within thirty days of the response, a Central Office Administrative Remedy Appeal or BP-11 with the BOP's General Counsel. Id. An inmate's appeal to the Central Office is the final administrative level of appeal in the BOP. 28 C.F.R. §542.14(b).

Plaintiff, Arlando Story, is serving a 108-month sentence, imposed by the United States District Court for the Eastern District of Tennessee on August 15, 2016, for Felon in Possession of a Firearm. (Doc. 14-1 at 1, Declaration of Jennifer Knepper, Attorney Advisor). His projected release date is December 4, 2023. Id. Story was transferred to FCI-Allenwood on October 7, 2019, as a result of his care level being raised from level one to level two on August 13, 2019. Id.

The BOP maintains computerized indexes of inmate administrative remedy submissions to verify whether an inmate has exhausted administrative remedy submissions on a particular issue. A review of Story's administrative remedies filed throughout his incarceration with the BOP,

reveal that Story submitted a total of six administrative remedies. (Doc. 14-1 at 11-13, Administrative Remedy Generalized Retrieval). One of Story's six administrative remedies concern a request for a lower bunk pass. Id.

On May 22, 2020, Story filed Administrative Remedy No. 1021531-F1 at the institutional level, requesting a lower bunk pass. Id. On June 4, 2020, Story received a response to his request.[2] Id. On June 23, 2020, Story filed an appeal of the response to the Northeast Regional Officer. Id. A response from the Regional Office was due on or before July 23, 2020. Id.

On June 23, 2020 Story signed the complaint in the above captioned action. (Doc. 1). It was mailed to the Court on June 24, 2020, where it was received, filed, and docketed on June 29, 2020. Id.

---

[2] The Warden's response, which indicated that it was for Informational Purposes only, stated the following:
> A thorough review of your medical files was performed on May 29, 2020. Records show you were issued a bottom assignment on November 12, 2019, with an expiration date of December 31, 2019. The expiration date is indicated in your copy of your medical duty status form. There are no records of you receiving an injury assessment for a fall since your arrival at the Federal Correctional Institution (FCI), Allenwood, Pennsylvania, on October 7, 2019. Records show you moved from a lower bunk to an upper bunk on March 27, 2020.

**IV.    Discussion**

Defendants seek summary judgment based on Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 (the "PLRA"). The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, ––– U.S. –––, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust-irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337 (2000).(explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57. "Of course, exhaustion applies only when administrative remedies are 'available.' Under certain circumstances, a nominally extant prison grievance policy is not truly an 'available' remedy. Ross v. Blake, ––– U.S. –––, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016). This applies when the procedure 'operates as a simple dead end—with officers unable or consistently

9

unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' Id. at 1859-60." Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)

The PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 92 (2006); Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); Rivera v. Pa. Dep't of Corr, 388 F.App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218. Notably, prison administration must also comply with the demands of the system. "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." Shifflett, 934 F.3d at 365.

10

Additionally, the PLRA strictly requires exhaustion prior to the filing of his complaint.  See Ahmed v. Dragovich, 297 F.3d 201, 209, n. 9 (3d. Cir. 2002); see also Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d. Cir. 2006) (non-precedential) ("[T]here appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").

Plaintiff's complaint challenges the denial of a request for a lower bunk and the denial of medical treatment after falling from the top bunk. (Doc. 1).

The record before this Court reveals that Plaintiff never filed an administrative remedy concerning the denial of medical treatment after his fall on May 2, 2020. Plaintiff did file Administrative Remedy No. 1021531-F1 requesting a lower bunk pass. And, while Plaintiff attempted to follow BOP regulations and file an appeal to the Northeast Regional Office, he never waited for the Regional Office to respond, and instead, filed the instant action. Plaintiff does not refute this, but, instead, in an attempt to demonstrate that he has fully exhausted his administrative remedies, submits a copy of his August 19, 2020 appeal to the Central Office, which claims that "30 days have lapsed per program statement of BP 10, no response." (Doc. 20 at 8, Central Office Administrative Remedy Appeal). Additionally, Plaintiff submits

11

the Central Office's November 4, 2020 Informational Purposes only response, which indicates that Plaintiff's "medical record reveals your current Medical Duty Status from indicates you are approved for a bottom bunk." (Doc. 20 at 7, Response).

Thus, it is evident that while Plaintiff may have attempted to exhaust his administrative remedy to final review, he did so after he had already filed the above captioned action in federal court. To that end, the PLRA mandates that prisoners exhaust all available administrative remedies prior to initiating a suit under §1331 for the deprivation of Constitutional rights. 42 U.S.C. §1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) (finding that prisoners must pursue their claims through prison channels prior to commencing related litigation in federal courts). The record is clear that Plaintiff did not exhaust his administrative remedies prior to filing the instant action, and Defendants are entitled to summary judgment.

## V. Conclusion

Based upon the undisputed facts of record, Defendants are entitled to summary judgment with respect to Plaintiff's failure to exhaust his claims regarding his May 2, 2020 injuries, from falling from the top bunk and Plaintiff's request for a bottom bunk pass. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 18, 2021**
20-1099-01.